# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TRAVIS RESMONDO,

    Plaintiff,

v.	Case No: 8:13-cv-2907-T-30EAJ

NEW HAMPSHIRE INSURANCE COMPANY,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon the Defendant's Motion for Final Summary Judgment (Dkt. #17) and Plaintiff's Memorandum in Opposition (Dkt. #22). Upon review and consideration, it is the Court's conclusion that the Motion should be granted in part and denied in part.

### *Background*

Plaintiff, Travis Resmondo, brings this action against Defendant, New Hampshire Insurance Company ("New Hampshire") under two policies: a Commercial Marine Liability Policy ("CML") and an excess liability policy referred to as a "Bumbershoot" policy (collectively the "Policies"). Resmondo attempts to collect a $208,759.94 judgment that was entered against New Hampshire's insured, Thunder Marine, on September 7, 2012.

On April 6, 2007, Resmondo purchased a high performance boat and 95-day Sea Tow membership from Thunder Marine. He received the boat on April 28, 2007, and took the boat out on the water the same day. While in the water, Resmondo heard a "pop" sound and engine alarms. Resmondo contacted Sea Tow who refused to respond on the basis that Resmondo did not have an account on file. Resmondo drove the boat to Galati Yacht Sales and secured the boat by rope but did not plug it into the shore power station. Resmondo informed Thunder Marine of the incident the same day.

On April 30, 2007, Resmondo was informed that the boat was taking on water and partially sunk. Thunder Marine and Resmondo investigated the matter pre-suit without notifying New Hampshire. Resmondo filed an insurance claim with his own insurance company, which retained an expert to investigate the claim. The expert interviewed two managing partners from Thunder Marine. Thunder Marine's counsel corresponded with the expert challenging some of his findings. Thunder Marine's Sales Manager/Vice President attended a joint inspection of the boat on May 23, 2007. On October 16, 2007, Resmondo's counsel issued a notice of warranty defect to Thunder Marine. The expert issued a report on November 5, 2007, concluding that the gimbal ring had a partial fracture prior to its delivery to Resmondo, and that it broke during Resmondo's April 28, 2007 voyage.

On May 20, 2010, Resmondo filed a complaint against Thunder Marine in the case styled *Resmondo v. Thunder Marine, et. al.,* Pinellas County Civil Case No. 10-7988-CI (the "Underlying Lawsuit"). The complaint alleged that Thunder Marine was liable for failing to obtain a Sea Tow membership and for delivering a boat with a cracked and/or

otherwise defective port stem drive housing. Resmondo served Thunder Marine on May 25, 2010. Thunder Marine failed to appear or file an answer, and the clerk entered a default against it. On September 4, 2012, the Court held a hearing on Resmondo's Motion for Entry of Final Summary Judgment at which Thunder Marine did not appear. Three days later, the court entered a final default judgment against Thunder Marine.

New Hampshire did not receive notice of any of the proceedings or pre-suit investigations until July 16, 2013, when it received an Acord General Liability Notice of Occurrence. The notice included minimal information regarding the sinking of the boat and a final judgment entered against its insured. Upon receipt of the claim, New Hampshire took immediate action to investigate it. Thunder Marine's manager confirmed that he did not place New Hampshire or any of its agents on notice of the claim. New Hampshire received notice of the Underlying Lawsuit on July 19, 2013. On August 15, 2013, New Hampshire's agent issued an acknowledgement and reservation of rights letter regarding Resmondo's claims. On August 27, 2013, New Hampshire's agent sent a letter to Thunder Marine denying coverage due to its failure to abide by the notice requirements and reserving its right to deny coverage on other grounds.

*Discussion*

**I.      Legal standard**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id*. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court sits in diversity jurisdiction and the case requires consideration of state law contract claims; therefore the law of the forum state applies. *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 412 F.3d 1224, 1227 (11th Cir. 2005). Under Florida law, insurance policies are interpreted according to the law of the place the insurer issued the policy. *State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1161 (Fla. 2006). The parties do not dispute that New Hampshire issued the policies in Florida, therefore Florida law applies.

II.     **New Hampshire's Motion for Summary Judgment**

New Hampshire moves for summary judgment arguing that the undisputed facts show that it received untimely notice of Resmondo's claims against Thunder Marine; and Resmondo cannot overcome the presumption of prejudice to New Hampshire. Further, Resmondo has not alleged covered "property damage" in the Underlying Lawsuit; and the Policies do not provide coverage due to the "Assured's Work" and "Assured's Product" exclusions. Finally, New Hampshire argues that the Bumbershoot policy is not implicated, as the claim is not in excess of the CML policy.

Under Florida law, "[a] policy provision relating to the time when notice of an [occurrence] must be given, and containing language such as, 'as soon as practicable,' means notice given with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case." *Laster v. U.S. Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974) (citation omitted). Therefore, in many cases, whether notice is timely will be a question of fact for the jury. *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 10-CV-62028, 2012 WL 1004851, at *4 (S.D. Fla. 2012). However, in cases where the undisputed factual record establishes notice is so late that no reasonable juror could find it timely, Florida courts will deem the notice untimely as a matter of law. *Id*. (four-year delay untimely as a matter of law); *Midland Nat'l Ins. Co. v. Watson*, 188 So. 2d 403, 405 (Fla. 3d DCA 1966) (two-year delay untimely); *Nat'l Trust Ins. Co. v. Graham Bros. Const. Co., Inc.*, 916 F. Supp. 2d 1244, 1257-58 (M.D. Fla. 2013) (four-year delay untimely).

5

"An insurer is prejudiced by untimely notice when the underlying purpose of the notice requirement was frustrated by the late notice." *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, No. 10–24310, 2012 WL 266438, at *4 (S.D.Fla. Jan. 30, 2012) (internal quotations omitted). "Thus, prejudice to the insurer results if the untimely notice substantially disadvantages the insurer's ability to (1) investigate a claim, (2) defend a claim, (3) or to mitigate damages through settlement or early repairs." *Id*.  *See also Renner v. State Farm Mutual Automobile Insurance Co*., 392 F.2d 666, 667 (5th Cir. 1968) (finding of prejudice in an automobile accident case when, because of late notice, the insurer was unable to photograph the automobiles involved in the collision or to promptly interview the participants, one of whom died 19 days later).

The Policies contain provisions requiring notice "as soon as practicable." New Hampshire argues that not only is it entitled to a presumption of prejudice given the six-year delay, it has also experienced actual prejudice. It is substantially disadvantaged in investigating the claim since the individual who sold the boat to Resmondo no longer works for Thunder Marine and cannot be located. Further, it had no opportunity to defend against the claim, present valid defenses to the suit, or seek indemnity or contribution from the other insurers involved. Thunder Marine did not appear in the case resulting in a default final judgment against it and the time for appeal has expired. Finally, New Hampshire could have conducted settlement negotiations during the numerous opportunities that arose in the litigation. Resmondo disputes that New Hampshire has demonstrated any prejudice.

New Hampshire's arguments as to prejudice all relate to whether Thunder Marine sold a defective product. For example, the missing salesman's testimony concerns the

6

condition of the boat at the time of sale. It is not necessary to resolve this issue because the defective product claim is not covered by the Policies.

The CML policy covers "property damage" which it defines as: "[p]hysical injury to tangible property, including all resulting loss of use of that property." The Bumbershoot policy similarly covers claims of "property damage" which it defines as "loss of or direct damage to or destruction of tangible property (other than property owned by the Named Assured)."

In addition, the CML policy contains the following pertinent exclusions:

2. EXCLUSIONS
This insurance does not apply to:
    * * *
j. Damage to The Assured's Product[1]
"Property damage" to "the Assured's product" arising out of it or any part of it.

  k. Damage to The Assured's Work[2]

---

[1] "The Assured's product" means:
a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
    (1) The Assured;
    (2) Others trading under the Assured's name; or
    (3) A person or organization whose business or assets the Assured has acquired; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
"the Assured's product" includes:
    (1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or *use* of "the Assured's product"; and
    (2) The providing of or failure to provide warnings or instructions.
"the Assured's product" does not include vending machines or other property rented to or located for the use of others but not sold.

[2] The "Assured's Work" means:
a. Work or operations performed by the Assured or on the Assured's behalf; and
b. Materials, pads or equipment furnished in connection with such work or operations.
    the "Assured's work" includes:
      a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "the Assured's work"; and
      b. The providing of or failure to provide warnings or instructions.

"Property damage" to "the Assured's work" arising out of it or any part of it and included in the "products-completed operations hazard". This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the Assured's behalf by a subcontractor.

The Bumbershoot policy also excludes damage to the insured's own product or work:

I. CONDITIONAL EXCLUSIONS

* * *

(f) Arising out of goods or products manufactured, sold, handled or distributed by the Assured or by others trading under his name (hereinafter called "the Assured's Products") if the occurrence occurs after possession of such goods or products has been relinquished to others by the Assured or by others trading under his name and if such occurrence occurs away from premises owned, rented or controlled by the Assured; . . . .

* * *

II. ABSOLUTE EXCLUSIONS
This insurance shall be free from liability or expense arising:

* * *

(f) From the failure of the Assured's products or work completed by or for the Assured to perform the function or serve the purpose intended by the Assured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any Assured except with respect to bodily injury or property damage as a result of said failure provided such property damage or bodily injury is insured in an underlying policy scheduled hereon[.]

Resmondo seeks recovery of the value of the boat and the Sea Tow membership as damages in the Underlying Lawsuit based on Thunder Marine's sale of a defective boat. The boat itself is the product of Thunder Marine since it was in the business of selling fully completed boats. The damage to the boat was due to its partial sinking. Resmondo has presented no evidence that the boat caused damage to other tangible property.

8

Under Florida law, where the insurance policy contains a "your product" exclusion, there is no coverage where the damage alleged is for a defective product. *See Liberty Mut. Fire Ins. Co. v. MI Windows & Doors, Inc.*, 131 So. 3d 15, 17 (Fla. 2d DCA 2013) (commercial general liability policy did not cover cost of replacing sliding doors sold by insured that sustained damage after being installed in condominiums since they were the insured's "product" and therefore excluded from coverage.). *See also Aetna Cas. and Surety Co. of Amer. v. Deluxe Systems, Inc.*, 711 So. 2d 1293, 1296-97 (Fla. 4th DCA 1998) (explaining that commercial general liability policies cover damages caused by the product, but not damages to the product itself); *Mid-Continent Cas. Co. v. Clean Seas Co., Inc.*, 3:06-CV-518-J-32MCR, 2009 WL 812072 (M.D. Fla. 2009) ("claims for losses incurred for the purchase price of the [defective product] are specifically excluded from coverage pursuant to exclusion [] as they are damages to the [] product itself."); *Harris Spec. Chems., Inc. v. United States Fire Ins. Co.*, No. 3:98-cv-351-J-20B, 2000 WL 34533982, *5 (M.D.Fla. Jul.7, 2000) ("Liability policies are not intended to provide protection against the insured's own faulty product or workmanship").

Further, under Florida law, where the liability insurance policy contains a "your work" exclusion, there is no coverage for recovery of the cost to repair or replace the work. *B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 13-10138, 2014 WL 3377690 (11th Cir. 2014) (commercial general liability insurance policy's "your work" exclusion applied where damage arose from insured's defective work and therefore could not cover the cost to repair damage to the property at issue.) *U.S. Fire Ins. Co. v. J.S.U.B., Inc.* 979 So. 2d 871,889 (Fla. 2007) ("if there is no damage beyond the faulty workmanship or defective work, then

9

there may be no resulting 'property damage.'"). *See also St. Paul Fire & Marine Ins. Co. v. Sea Quest Int'l. Inc.*, 676 F. Supp. 2d 1306 (M.D.Fla. 2009) (applying *J.S.U.B.* to marine policy concerning construction of a yacht.).

Since the boat, its sale, and warranty are the "product" and "work" of Thunder Marine, and there is no evidence of "property damage" to anything other than the boat itself, the Policies do not cover Resmondo's defective product claim. Further, Resmondo's breach of contract claim, to the extent that it demands recovery of the cost of the Sea Tow membership, is not covered as "property damage." *See Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 450 F. Supp 2d 1311, 1317-18 (M.D.Fla. 2006) ("…breach of contract claims for the recovery of money are not covered by general liability insurance companies."). Therefore, the Court concludes that Resmondo's claims based on Thunder Marine's sale of a defective product are not covered under the Policies.

As to the Sea Tow issue, New Hampshire did not address the potential for coverage based on a breach of contract for failure to register timely Resmondo's membership. Specifically, its arguments ignore the causation theory that Resmondo's inability to get Sea Tow to retrieve the boat after the engine failure was the cause for the damages that he suffered. It was Thunder Marine's contractual responsibility to submit the paperwork to Sea Tow on a timely basis, and the record does not contain evidence regarding whether it fulfilled that obligation. If Thunder Marine failed in its obligation, and if its failure contributed to the sinking and loss of the boat, then Plaintiff has a claim. Therefore, the Court requires New Hampshire to demonstrate how Thunder Marine's notification is

untimely as a matter of law and creates prejudice in its ability to defend against the claim based on this theory of liability.

*Conclusion*

The Court concludes that it cannot resolve all of the issues on summary judgment based on the evidence currently in the record. Resmondo proceeded under two theories of liability against Thunder Marine in his Underlying Complaint: its sale of a defective boat and its breach of contract for failing to secure the Sea Tow membership. As to prejudice concerning Thunder Marine's sale of a defective product, that issue is moot since the Court has concluded that the claim is not covered under the Policies. As to prejudice concerning Thunder Marine's contractual liability to secure the Sea Tow membership, Resmondo's claim survives. The Court will deny the Motion on this basis without prejudice to allow further discovery on that issue. Defendant may file a renewed motion for summary judgment once discovery is complete.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Final Summary Judgment (Dkt. #17) is GRANTED IN PART and DENIED IN PART as stated herein.

**DONE** and **ORDERED** in Tampa, Florida, this 22nd day of September, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2013\13-cv-2907 msj 17.docx